ered, PETERS, District Judge, declining to take a part in the decision:

PATERSON, Circuit Justice. The great rule of interpretation, with respect to deeds and contracts, is to put such a construction upon them as will effectuate the intention of the parties, if such intention be consistent with the principles of law. In the present case, there is no difficulty in coming at the intention, as it is clearly and forcibly expressed in the agreement, and is capable of receiving one construction only. The time of payment is made a substantial, and not a mere formal, circumstance; it enters into the essence of the contract; and, therefore, must be observed. The court cannot decree against the legal and express stipulation of the parties themselves. The situation of the parties, the nature of the property, and the speculative spirit of the project, were powerful inducements for drawing up the agreement, in the plainest and strongest terms, so as to leave no doubt as to the intention, and to render the time of performance a cardinal point. Again, if the agreement would admit of another construction, the complainant, under the circumstances of the case, comes too late to avail himself of it. The door of equity cannot remain open for ever. The complainant did not make a tender of the money, till a lapse of five years after the termination of the time limited by the contract. So far was he from using legal diligence, that he has been guilty of gross delay. In cases of the present kind, equity will not suffer a party to lie by till the event of the experiment shall enable him to make his election with certainty of profit one way, and without loss any way. This mode of procedure is unfair; contrary to natural justice, and in exclusion of mutuality. There is a strange mixture of legal and equitable powers, in the courts of law of this state. This arises from the want of a distinct forum to exercise chancery jurisdiction; and, therefore, the common law courts equitise as far as possible. Whether, if relief be proper, the supreme court of this state could have extended it to the complainant, it is unnecessary to determine. Thus much, however, might and ought to have been done, on the part of the complainant; he ought, when notice was given for him to show cause why judgment should not be entered, to have laid the equity of the case before the judges of that court, who, if they thought proper, might have deferred the entering of judgment, or ordered it to be entered on terms, to wit, to be vacated on payment of the awarded sum, by a limited period. But the complainant, although he had previous notice, did not avail himself of an appeal to the discretion of the court; but suffered judgment to pass against him, without making any objection. There being no equity in the complainant's case, his bill must be dismissed, with costs.

## Case No. 6,620.

HOLLINGSWORTH et al. v. SEVENTY DOUBLOONS & THREE SMALL PIECES OF GOLD, Each of the Value of an Eighth of a Doubloon.

[19 Niles, Reg. 104.]

District Court, E. D. Pennsylvania. Sept. 29, 1820.

SALVAGE—FLOATING CHEST—COMPENSATION.

[While a ship was almost becalmed on the high seas, a floating chest was found, and with but little trouble was taken on board. It was at first supposed to be empty, but concealed in grooves and interstices were found 70 doubloons. *Held*, that the finders were not entitled to the whole property, though there were no claims or marks of ownership, but should be compensated as for a salvage service, and that a moiety should be allowed.]

[This was a libel in rem by Levi Hollingsworth and son and Jonathan Ogden, owners of the ship Jane, Frederick S. Luburg, master, and James Fairfowl, first mate, and others, the officers and crew of the said ship, against seventy doubloons and three small pieces of gold, each of the value of an eighth part of a doubloon, for salvage.]

PETERS, District Judge. The gold in question was discovered when the ship arrived in Philadelphia, in the remnants of an old chest, which had been broken up in the river Delaware, on the voyage from Lisbon, and the pieces had been thrown into the long boat. This chest was found floating on the ocean, after the vessel had been thirty-four days at sea, in lat. 38, 24 N., and long. 52, 28. It was supposed to be empty, but the gold was found concealed in grooves or interstices of the chest. No marks were seen on the chest. The remnants I have directed to be lodged in the clerk's office, for inspection, should any owner hereafter appear. The vessel was almost becalmed when the chest was discovered, she going only a knot or a knot and a half an hour, at the time. Some ineffectual attempts were made to secure the chest with a harpoon. On their failure, one of the libellants, a mariner (Benthal), jumped overboard, and made a rope fast to the chest by which it was hauled in.

This is a case of little merit, as it regards danger, delay, or any impediment to the progress of the voyage of the ship, nor was there any great exertion or labor on the ship's officers or crew in the salvage. Benthal had the most of any risk or exertion, in the securing of the chest. How or when it had been abandoned to the waves cannot appear, and is left to mere conjecture. It would seem that it had contained articles which had been taken out possibly by sea robbers, who had thrown over the chest as worthless. The owner, whoever he may be, would not have cast his money on the waters; nor would the takers or plunderers of the chest have voluntarily parted with this valuable portion of their prey. The ejection cannot, with any

tolerable plausibility, be considered as a voluntary abandonment, so as to entitle the finders to the benefit of the absolute rule of occupants "fiunt derelicta;" if even that definition of "derelict" had not been long exploded from the codes of maritime laws. The supplementary libel, claiming the whole, as derelict, under a rule which does not now exist, must be dismissed.

This must be considered as a case of salvage, subject to the principles established on that subject. These principles I have long ago settled in this court; they may be seen in several cases published in the admiralty decisions, and they need not be here repeated. A case, decided by Judge Johnson, in 1816, in the circuit court of the United States, for the South Carolina district,—Fisher v. The Sybile [Case No. 4,824],—confirms the views on the subjects of derelict and salvage, which I have long entertained, and is an able and clear exposition of the modern law respecting them. A reference to that case, which has been published in several public prints, of New York and Philadelphia, supercedes the necessity of any discussion on my part. The chance of the owner was indeed hopeless. He may not have recovered his property, unless through the accidental occurrence which has brought it within the power of this court, whose duty it is as well to reward sailors, as to take care of the property of owners, and afford them an opportunity of recovery. The sailors must stand on their own merits, without regard to the hopelessness of recovery by the owner. There is no distinction favorable to the finders of money; on the contrary, the maritime codes assign less salvage to those who find money, jewels, and other articles of such intrinsic value, but of less difficulty in saving or transporting. The only reason for any comparative advantage to such salvors, would be to encourage the disclosure of the finding, where concealment might be so easy, by a combination to secrete it, and thus, taking human propensities as we too often observe them, to reward overt acts of integrity, where covert malversation might have been, and, no doubt, often is, practised. The quantum of salvage is not fixed by any general rule, but depends on the circumstances of every case. I confess, the discretion I am often obliged to exercise, is sometimes embarrassing; in this case it is not easy to determine what is exactly right. I find by some authorities produced, and in some of the old maritime laws, that half the amount of the derelict has been given in many instances; much depends on the gross amount, for where that is large, I always give the less proportion, and thus sufficiently reward salvors, without an undue sacrifice by the owners, and I have concluded to allow half in this case, as the whole is not of great amount, and the establishment of a legal claim but slightly probable.

I decree the salvage allowed (the costs and charges being deducted from the whole amount), to be distributed as follows: The owners are to receive one-third of the salvage. The residue is to be divided among the officers and crew of the ship, in the manner and in like proportion as in the case of Taylor v. The Cato [Case No. 13,786], decided in this court, save that the part to be divided among the mariners, carpenter, steward and cook, shall be so allotted that Benthal shall receive two shares; the whole being divided into equal parts, and an extra share calculated upon; i. e. one is to be added to the actual numbers. Let a decree, in the usual form, be drawn on these principles. The remaining half of the balance of the whole is to remain in this court, deposited in bank according to the practice of this court, and the late law in affirmance of it, for the period of one year and a day, subject to any legal claims of the owner or owners; and if no such claims be interposed, the moneys remaining in court are to be disposed of agreeably to its future order and decree.